The CITY OF CARROLLTON,
Appellant

v.

Ken PAXTON, Attorney General of Texas,[1] Appellee

NO. 03–13–00571–CV

Court of Appeals of Texas, Austin.

Filed: March 31, 2016

Rehearing Overruled June 14, 2016

1. We have substituted the current officeholder. *See* Tex. R. App. P. 7.2.

Scott M. Tschirhart, George E. Hyde, Lauren Crawford, Denton, Navarro, Rocha, Bernal, Hyde & Zech, Austin, TX, for Appellant.

Matthew R. Entsminger, Open Records Litigation, Administrative Law Division, Austin, TX, for Appellee.

Before Chief Justice Rose and Justice Pemberton

## *OPINION*

Bob Pemberton, Justice

The City of Carrollton appeals a final summary judgment compelling it to disclose certain information requested under the Texas Public Information Act (PIA)[2] and awarding attorney's fees against it. The City urges principally that the information in question is protected as a matter of law by the "law-enforcement" exception that is codified in PIA Section 552.008[3] or, alternatively, by the common-law "physical-safety exception" that has been recognized in recent years by the Texas Supreme Court.[4] On this record, we agree that substantial portions of the information at issue are protected by the law-enforcement exception as a matter of law and, to that extent, reverse the district court's judgment and render judgment declaring that the City may withhold the information. As for the remaining information, however, we affirm the district court's judgment. Additionally, in light of these holdings, we reverse the judgment award of attorney's fees and remand that issue to the district court for further proceedings.

## BACKGROUND

This cause stems from a succession of ten PIA requests, made to the City over a period of approximately four months, by Steven Eric Benzer, a resident whose history of demands on Carrollton municipal resources is well-known.[5] Each of Benzer's ten requests sought information relating to specific occasions of City police activity in Benzer's neighborhood, including police responses to several calls for service that Benzer himself had initiated. In response to each request, the City timely sought a determination from the Attorney General that portions of the responsive information were either or both

2. *See* Tex. Gov't Code §§ 552.001–.353.

3. *See id.* § 552.108.

4. *See Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.,* 343 S.W.3d 112, 115–18 (Tex.2011).

5. *See, e.g., Ex parte Benzer,* Nos. 02–11–00284–CR, 02–11–00285–CR, 02–11–00286–CR, 02–11–00287–CR, 02–11–00288–CR, 2012 WL 310508, at *1 & n. 2 (Tex.App.–Fort Worth Feb. 2, 2012, no pet.) (mem. op., not designated for publication) (describing Benzer's practice of "frequent[ing] the streets of his neighborhood in order to observe and report what he perceived to be criminal activity, including ordinance code violations," and calling 9–1–1 what was "conservatively estimated" to have been " 'easily 225' times over the course of a few months during 2009"); *see also id.* at *1 n. 2 (adding that "Benzer's complaints were so numerous that he apparently acquired quite a reputation; Benzer's wife ... claimed that one Carrollton police officer and three Carrollton dispatch officers were fired for egging his house").

exempted from mandatory disclosure via Subchapter C of the PIA[6] or were made confidential by external law.[7] As pertinent to this appeal, the information sought to be withheld chiefly included notes generated within a Computer–Aided Dispatch (CAD) system that the City's police department utilizes. Simply described, a CAD system provides an automated interface between 911 operators or dispatchers and various record-management systems,[8] compiling information about the caller, the origination location and time of the call, the nature and assigned priority of the call, and information in the system about a person (e.g., "history, protection orders, warrants, mental or health issues, gang information, sex offender registry information, [and] vehicle information").[9] The "CAD notes" at issue reflected these compilations of information as well as a time-stamped log detailing the sequence in which the information was received and the manner in which the police department responded to it.

There is no dispute that the CAD notes in question would constitute "public information" within the PIA's broad definition[10] and that many of the notes would additionally be "a completed report, ...

evaluation, or investigation made of, for, or by a governmental body," one of the categories of so-called "super-public" information that PIA Section 552.022 generally makes subject to disclosure, notwithstanding the exemptions in Subchapter C, "unless made confidential under this chapter [the PIA] or other law."[11] However, the Legislature has notably excepted from this mandate information that is exempted from disclosure by the law-enforcement exception in PIA Section 552.108,[12] meaning that Section 552.108 empowers governmental bodies to withhold both ordinary "public information" and completed reports, evaluations, or investigations that would otherwise be subject to "super-public" disclosure under Section 552.022. The City invoked Section 552.108 in response to all ten of Benzer's requests.

In pertinent part, Section 552.108 applies to:

(a) Information held by a law enforcement agency ... that deals with the detection, investigation, or prosecution of crime ... if:

(1) release of the information would interfere with the detection, in-

---

**6.** *See* Tex. Gov't Code §§ 552.101–.156 ("Subchapter C. Information Excepted From Required Disclosure"), .301 & .326 (generally requiring that governmental body timely raise exemption before Attorney General in order to preserve right to claim exemption in court).

**7.** *See id.* § 552.101 (exempting "information considered to be confidential by law, either constitutional, statutory, or by judicial decision"); *In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex.2001) (governmental body not required to preserve claim to confidentiality "under other law" before Attorney General).

**8.** CAD systems "allow public safety operations and communications to be augmented, assisted, or partially controlled by an automated system." *See Law Enforcement Information Technology Standards Council*

*(LEITSC), Standard Functional Specifications for Law Enforcement Computer Aided Dispatch (CAD) Systems* viii (2006), https://www.it.ojp.gov/ documents/LEITSC_Law_Enforcement_CAD_Systems.pdf. These systems "collect the initial information for an incident and then provide the information to one or more [record management systems]." *Id.*

**9.** *Id.* at 4–5.

**10.** *See* Tex. Gov't Code § 552.002 (defining "public information").

**11.** *Id.* § 552.022(a).

**12.** *See id.* (" ... a completed report, audit, evaluation, or investigation made of, for, or by a governmental body, except as provided by Section 552.108").

vestigation, or prosecution of crime; [or]

(2) it is information that deals with the detection, investigation, or prosecution of crime only in relation to an investigation that did not result in conviction or deferred adjudication.

(b) An internal record or notation of a law enforcement agency ... that is maintained for internal use in matters relating to law enforcement or prosecution ... if:

(2) the internal record or notion relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication.[13]

However, Subsection (c) of Section 552.108 qualifies the protection provided in Subsections (a) and (b) to the following extent:

(c) This section does not except from the requirements of Section 552.021 [i.e., PIA mandatory disclosure] information that is basic information about an arrested person, an arrest, or a crime.[14]

With respect to nine of Benzer's ten requests, the Attorney General agreed with the City that the information at issue would satisfy Subsections (a)(1), (a)(2), or (b)(2) of the law-enforcement exception.[15]

However, the Attorney General also concluded that significant portions of this otherwise-protected information was "basic information" subject to disclosure under Subsection (c). As for the tenth request (addressed in Tex. Att'y Gen. OR2012–11115), the Attorney General determined that the City had failed to demonstrate the applicability of the law-enforcement exception because, he reasoned, the City had made "contradictory representations" in attempting to invoke two "mutually exclusive" Subsections of Section 552.108:(a)(1) ("[i]nformation held by a law enforcement agency ... if ... release of the information would interfere with the detection, investigation, or prosecution of crime"), and (b)(2) ("[a]n internal record or notion or a law enforcement agency ... if ... the internal record or notation relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication").[16]

The City had also asserted that some of the information at issue was made confidential under the common law, and thus was also excepted from disclosure by PIA Section 552.101,[17] by virtue of either or both the "informer's privilege"[18] and the "physical-safety exception" recognized by the Texas Supreme Court in the *Cox Tex-*

---

13. *Id.* § 552.108(a)(1), (2), (b)(2).

14. *Id.* § 552.108(c).

15. *See* Tex. Att'y Gen. OR2012–10755; Tex. Att'y Gen. OR2012–11205; Tex. Att'y Gen. OR2012–11135; Tex. Att'y Gen. OR2012–11208; Tex. Att'y Gen. OR2012–12004; Tex. Att'y Gen. OR2012–13432; Tex. Att'y Gen. OR2012–13395; Tex. Att'y Gen. OR2012–18634. OR2012–12004 addressed two substantially duplicative requests together.

16. Tex. Gov't Code § 552.108(a)(1), (b)(2).

17. *See id.* § 552.101 ("Information is excepted from the requirements of Section 552.021

if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision.").

18. *See, e.g., Abbott v. Dallas Area Rapid Transit,* 410 S.W.3d 876, 883 (Tex.App.–Austin 2013, no pet.) (observing that "[t]he 'informer's privilege' is 'the Government's privilege to withhold from disclosure the identity of individuals who provide the government with information regarding violations of law to officers charged with enforcement of that law' " (quoting *Roviaro v. United States,* 353 U.S. 53, 59–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).

*as Newspapers* case.[19] Agreeing that four of the requests implicated information protected by the informer's privilege, the Attorney General determined that the City could redact a limited amount of information that tended to identify complainants other than Benzer who had summoned police assistance.[20]

The City filed suit in Travis County district court to contest disclosure,[21] praying further for attorney's fees as the PIA permits.[22] It subsequently filed a "traditional" motion for summary judgment on its claims. The Attorney General responded with a "traditional" cross-motion for summary judgment that the City take nothing and that he be awarded his attorney's fees instead. The cross-motions joined issue as to the following:

- Regarding OR2012–11115, the City urged that the summary-judgment evidence conclusively established the applicability of the law-enforcement exception. The Attorney General countered that he had discretion to deem the exception inapplicable.

- In regard to all ten requests, the City disputed that the responsive CAD notes contained any information that would constitute "basic information about an arrested person, an arrest, or a crime," and thereby be subject to disclosure under Subsection (c), under a proper construction of that provision. The Attorney General responded that the CAD notes contained or consisted of "basic information" subject to disclosure under Subsection (c).

- With respect to any of the CAD notes held to be subject to disclosure as "basic information," the City argued that the entirety of this information was made confidential by the common-law physical-safety exception.[23] In the further alternative, the

19. *Cox Tex. Newspapers,* 343 S.W.3d at 118 (explaining that common law permits information to be withheld "if disclosure would create a substantial threat of physical harm"). Both before the Attorney General and in the subsequent litigation, the City has also asserted the same interest in preventing physical harm under the rubrics of common-law privacy and the "special circumstances" that the Attorney General had derived from the privacy right. *See, e.g.,* Tex. Att'y Gen. OR2005–07052, at 6 (noting that "information also may be withheld under section 552.101 in conjunction with common law privacy upon a showing of certain 'special circumstances' "). However, the supreme court concluded in *Cox Texas Newspapers* that "freedom from physical harm is an independent interest protected under law, untethered to the right of privacy," and similarly rejected the Attorney General's "special circumstances" test in favor of the common-law physical-safety standard it had announced. *See Cox Tex. Newspapers,* 343 S.W.3d at 117–18. Accordingly, we address the City's claims seeking to withhold information based on perceived threats of physical harm solely under the rubric of the physical-safety exception recognized in *Cox Texas Newspapers.*

20. *See* Tex. Att'y Gen. OR2012–10755; Tex. Att'y Gen. OR2012–11205; Tex. Att'y Gen. OR2012–11135; Tex. Att'y Gen. OR2012–13432.

21. *See* Tex. Gov't Code §§ 552.324–.325 (permitting governmental body to seek declaratory relief from compliance with Attorney General decision requiring disclosure of information under PIA).

22. *See id.* § 552.323(b) ("In an action brought under Section 552.324, the court may assess costs of litigation and reasonable attorney's fees incurred by a plaintiff or defendant who substantially prevails. In exercising its discretion under this subsection, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith.").

23. Although the City had raised the physical-safety exception before the Attorney General with respect to only one of Benzer's ten re-

City urged that the Attorney General had applied the common-law informer's privilege too restrictively and that additional information should be redacted. The Attorney General disagreed, insisting that the City had failed to present evidence sufficient to invoke the physical-safety exception or to establish that additional information should be withheld under the informer's privilege.

The summary-judgment evidence consisted of the information the City sought to withhold and related correspondence, which was submitted *in camera* to the district court, and an attorney's-fees affidavit submitted by the Attorney General. Further, in support of its claims to the physical-safety exception, the City also presented documents from previous criminal proceedings involving Benzer. These documents reflected that Benzer had been criminally sanctioned—including incarceration that had concluded shortly before he had initiated the succession of PIA requests at issue—based on judicial determinations that he had engaged in violent, threatening, and retributory behavior toward various neighbors. Benzer did not exercise his right to intervene in the proceedings.[24]

Following a hearing, the district court denied the City's summary-judgment motion and granted the Attorney General's motion, declaring specifically that "basic information within a requested computer-aided dispatch (CAD) report is not excepted from disclosure by section 552.108 of the Government Code" and that the City had "failed to demonstrate that any portion of the information at issue is excepted from disclosure pursuant to section 552.101 of the Government Code in connection with the common-law physical safety exception." The court rendered final judgment ordering that the information in question be released to Benzer in accordance with the Attorney General's rulings and awarding him all of the attorney's fees he had sought. This appeal ensued.

## ANALYSIS

The City presents four issues on appeal. In its second issue, the City brings forward its contentions regarding OR2012–11115, urging that the summary-judgment evidence conclusively establishes that the information at issue is protected, in the first instance, by the law-enforcement exception. In its first issue, the City reurges its broader argument that the CAD notes it seeks to withhold do not contain "basic information about an arrested person, an arrest, or a crime" so as to be subject to disclosure under Subsection (c) ·of PIA Section 552.108. In its third issue, the City argues that any basic information otherwise subject to disclosure under Subsection (c) is made confidential by the common-law physical-safety exception or, in the further alternative, that certain portions of that information order disclosed by the Attorney General are protected by the informer's privilege. Finally, in its fourth issue, the City disputes that the Attorney General is entitled to an award of attorney's fees under the PIA.

### Standard of review

■ We review the district court's summary-judgment rulings de novo.[25] We

---

quests, it was not required to do so in order to preserve its right to raise this common-law protection in court. *See City of Georgetown,* 53 S.W.3d at 336.

**24.** *See id.* § 552.325(a) (allowing requestor to intervene).

**25.** *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005) (citing *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003)).

take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[26] Where, as here, both parties move for summary judgment on overlapping issues and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered.[27]

Integral to analysis of the summary-judgment rulings in this case is construction of the PIA, which itself presents a question of law that we review de novo.[28] When construing statutes, our primary objective is to give effect to the Legislature's intent.[29] To discern that intent we begin with the statute's words, considered in the context in which they are used.[30] "We presume that the legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."[31] We likewise presume that the Legislature chose the words of a statute " 'with complete knowledge of the existing law and with reference to it.' "[32]

As the Attorney General emphasizes, the Legislature has directed that the PIA be "liberally construed in favor of granting a request for information,"[33] and that we are to give further "due consideration" to his construction and application of the Act.[34] But neither principle empowers either the Attorney General or courts to "construe" the PIA in derogation of the statutory text the Legislature has actually used.[35]

**26.** *Id.*

**27.** *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

**28.** *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex.2000); *see also City of Houston v. Bates*, 406 S.W.3d 539, 543–44 (Tex.2013) (explaining that appellate review of legal question of statutory construction is de novo).

**29.** *Bates*, 406 S.W.3d at 543.

**30.** *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439, 441 (Tex.2011) (citing Tex. Gov't Code § 312.003).

**31.** *Id.*

**32.** *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig.proceeding) (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)).

**33.** Tex. Gov't Code § 552.001(b).

**34.** *York v. Texas Guaranteed Student Loan Corp.*, 408 S.W.3d 677, 683 (Tex.App.–Austin 2013, no pet.); *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 121 (Tex.App.–Austin 2003, no pet.).

**35.** *See, e.g., Holmes v. Morales*, 924 S.W.2d 920, 923–25 (Tex.1996) (rejecting Attorney General's "impermissible administrative limitation upon the Open Records Act's exception's plain language" under the then-applicable version of the law-enforcement exception); *accord Boeing Co. v. Paxton*, 466 S.W.3d 831, 838 (Tex.2015) (similarly rejecting Attorney General's "longstanding"—but extra-statutory—limitation on third-party standing to raise exemption provided under PIA Section 552.104; observing that "[w]hile the Attorney General's interpretation of the [PIA] is entitled to due consideration, as with other administrative statutory constructions, such deference must yield to unambiguous statutory language" (citing *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex.2010)); *see also, e.g., TGS–NOPEC*, 340 S.W.3d at 438 (noting general rule that courts defer to agency constructions of vague or ambiguous rules and statutes only to extent construction is reasonable and consistent with text); *cf. Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 637 & n. 14 (Tex.2013) (rejecting comptroller's construction of tax exemption where statute did not support it: "These provisions do not impose, either explicitly or implicitly,

### Applicability of law-enforcement exception in OR2012–11115

■ In its second issue on appeal, the City asserts that the summary-judgment evidence conclusively establishes that the information at issue in OR2012–11115 meets the requirements of Subsection (b)(2) of the law-enforcement exception, which protects "[a]n internal record or notation of a law enforcement agency . . . that is maintained for internal use in matters relating to law enforcement or prosecution . . . in relation to an investigation that did not result in conviction or deferred adjudication." [36] We agree with the City that it does. The information at issue in OR2012–11115 consists of two offense reports and CAD notes related to the police investigation of an alleged assault with property damage (specifically, damage to a camera) inflicted upon Benzer by another. There is no dispute that the incident gave rise to misdemeanor charges that were ultimately dismissed pursuant to an agreement involving payment of restitution. These uncontroverted facts satisfy Subsection (b)(2) as a matter of law.

■ In insisting otherwise, the Attorney General emphasizes that the City at the administrative stage had invoked not only Subsection (b)(2) of Section 552.108, but also (a)(1), claiming that the information was "held by a law enforcement agency . . . that deals with the detection, investigation, or prosecution of crime . . . [and] . . . release of the information would interfere with the detection, investigation, or prosecution of crime." [37] According to the Attorney General, (a)(1) and (b)(2) are "mutually exclusive" protections because, in his view, (a)(1) presumes an active criminal investigation or prosecution while (b)(2) presumes an investigation that has already concluded. Based on this premise, the Attorney General condemns the City's claim to both protections as "contradictory representations regarding the status of the underlying investigation," affording him discretion to decline to credit either claim.

The Attorney General's construction of Section 552.108 is not reasonable or consistent with the statutory text, at least as it applies to the record here. The summary-judgment evidence establishes that the City invoked (a)(1) in addition to (b)(2) because the dismissal of the charges had been without prejudice, leaving open the possibility (at least within the limitations period) that the charges could be re-filed. Were that to occur, the City claimed, the release of the information would compromise that eventual "prosecution of crime" within the meaning of (a)(1). Accordingly, the City's invocation of both (a)(1) and (b)(2) was not "contradictory," as the Attorney General presumes, but complementary.

More critically, even if there was some potential inconsistency in the City's reliance on both (a)(1) and (b)(2) at the administrative stage, there is no support in Section 552.108's text for the Attorney General's notion that the City's initial invocation of (a)(1) singularly forfeits or waives reliance on (b)(2) when (b)(2) is also timely invoked and is ultimately shown conclusively to apply. Reliance on alternative theories of recovery or defense is a long-accepted, commonplace feature of Texas civil practice,[38] and we see no indication in the PIA that the Legislature

---

any such extra-statutory requirement, and we decline to engraft one—revising the statute under the guise of interpreting it.").

**36.** Tex. Gov't Code § 552.108(b)(2).

**37.** *Id.* § 552.108(a)(1).

**38.** *See* Tex. R. Civ. P. 48 (permitting pleading in the alternative).

intended to foreclose that familiar practice in regard to the Act's exemptions.[39] To the contrary, the Legislature structured Section 552.108(a) and (b) as a compilation of multiple separate protections, and we can only conclude that it intended each protection to be given effect whenever shown to apply.[40] Consequently, it is singularly dispositive that (b)(2) applies as a matter of law. We sustain the City's second issue.

**"Basic information about an arrested person, an arrest, or a crime"**

 Our disposition of the City's second issue means that the City may withhold the information at issue in OR2012–11115 under Section 552.108's law-enforcement exception unless and to the extent the information is "basic information about an arrested person, an arrest, or a crime" that must be disclosed under Subsection (c) of that provision. Similarly, in the posture of this appeal, there is no dispute that the contested information that is responsive to Benzer's other nine requests would also be protected by the law-enforcement exception unless and to the extent Subsection (c) applies. In its first issue, the City disputes that any of the CAD notes responsive to Benzer's ten requests comprise or contain "basic information about an arrested person, an arrest, or a crime" within the meaning of Subsection (c). The City's arguments and the Attorney General's responses center on the meaning of "basic information about an arrested person, an arrest, or a crime," as informed by the historical and jurisprudential origins of that phrase.

The parties concur that the Legislature's use of "basic information" in Subsection (c) evokes a concept that originated in a 1975 decision of the Fourteenth Court of Civil Appeals, *Houston Chronicle Publishing Co. v. City of Houston.*[41] In *Houston Chronicle,* that publication sought documents and information from the City of Houston's police department that included administrative listings of arrests and arrestees (termed a "police blotter," "Show–Up Sheet," and an "Arrest Sheet," and typically included such information as the name, age, and race of an arrestee, the offense charged, and the name of the arresting officer), as well as "offense reports" (which, as described by the court, reflected "the offense committed, location, identification and description of the complainant, premises, time of the occurrence, property involved, vehicles involved, identification and description of the witnesses, weather, details of the offense in question, and the names of the investigating officers," and "may include such items as a synopsis of a purported confession, officers' speculation about a suspect's guilt, investigating officers' views on a witness's credibility, statements by informants, ballistics reports, fingerprint comparisons, and blood and other laboratory tests").[42] Although the Chronicle had apparently

---

**39.** *See, e.g., Abbott v. State Bar,* 241 S.W.3d 604, 605–06 (Tex.App.–Austin 2007, pet. denied) (noting that State Bar asserted alternative arguments against disclosure in request for open-records ruling and in subsequent proceedings); *cf. City of Garland,* 22 S.W.3d at 355, 358–364 (addressing arguments that information was not "public" under the PIA and, in the alternative, that even if information was "public," exception to disclosure applied).

**40.** *See, e.g., Texas Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex.2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind.").

**41.** 531 S.W.2d 177, 185 (Tex.Civ.App.—Houston [14th Dist.] 1975), writ ref'd per curiam, 536 S.W.2d 559 (Tex.1976).

**42.** *Id.* at 179.

been given access to these sorts of documents and information previously, the City had maintained that the then newly enacted Open Records Act afforded it discretion to withhold the information from disclosure under the predecessor to section 552.108, which applied to "records of law enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law enforcement agencies which are maintained for internal use in matters relating to law enforcement."[43] The Chronicle sought a declaration that it was entitled to access the documents under both the Act and the federal and state constitutional free-press guarantees.[44]

The Fourteenth Court of Appeals ultimately held that the Offense Reports (but not the administrative documents) were shielded by the predecessor to Section 552.108.[45] However, regarding that otherwise-protected information, the court also declared the existence of a "constitutional right of access" of "the press and the public ... to information concerning crime in the community, and to information relating to activities of law enforcement agencies" that was grounded in public concerns with both "ever increasing criminal activity, violence, and unsafe streets" and "the creation of a police state."[46] The court then engaged in a "balancing of interests" between this "people's right to know" and countervailing considerations in "preserving the secrecy of [criminal] records from the eyes of defendants" within the adversary system and preventing due-process violations through "excessive publicity."[47] It reached the following conclusions regarding the Offense Reports:

[I]t seems to us that these legitimate competing interests can be reconciled by the finding of a constitutionally protected right of the press and the public to the front page (or an exact copy thereof) of the Offense Report structured to include the offense committed, location of the crime, identification and description of the complainant, the premises involved, the time of the occurrence, property involved, vehicles involved, description of the weather, a detailed description of the offense in question, and the names of the investigating officers.... This constitutional right of access to information should not extend to such matters as a synopsis of a purported confession, officers' speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood or other laboratory tests.[48]

Insisting that it was entitled to greater disclosure, the Houston Chronicle filed a

43. *Id.* at 180–81; *see* Act of May 25, 1973, 63d Leg., R.S., ch. 424, § 3(a), 1973 Tex. Gen. Laws 1112, 1114, *repealed by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46(1), 1993 Tex. Gen. Laws 583, 986.

44. *Houston Chronicle,* 531 S.W.2d at 181–82.

45. *See id.* at 185.

46. *Id.* at 186.

47. *See id.*

48. *Id.* at 186–87. The court of appeals also addressed a third category of documents termed "Personal Histories," "Individual Arrest Records," or "rap sheets," that consisted of compilations of individual criminal histories, including arrests that did not lead to convictions, and included booking photos or "mug shots." The court held that these types of documents, like Offense Reports, were shielded in the first instance by the predecessor to the law-enforcement exception. However, emphasizing the presumption of innocence and "the potential for massive and unjustified damage to the individual" in that regard, the court concluded that the constitutional right of access did not extend to these documents. *See id.* at 187–88.

petition for writ of error to the Texas Supreme Court. The City of Houston did not. The high court denied review in a per curiam opinion in which it "agree[d] with the opinion of the court below that neither the Texas Open Records Act nor the United States or Texas Constitutions requires disclosure of the complete records sought by the Houston Chronicle." [49] Perhaps more critically, emphasizing that the City had not challenged the portion of the ruling adverse to it, the supreme court also pointedly "reserv[ed] the question as to whether the press and public have a statutory or constitutional right to obtain all of the information which the court of civil appeals has held to be public information." [50] While the Texas Supreme Court has still never endorsed that holding, in a subsequent case it did use the phrase "basic information concerning a crime" as a shorthand descriptor for the types of information that the Fourteenth Court held to be public in *Houston Chronicle.* [51] It is apparently from this usage that the term "basic information" originated.

Despite these somewhat shaky jurisprudential origins, the concept of a constitutional right of public access to certain "basic information" otherwise protected by the law-enforcement exception quickly became enshrined in Attorney General open-records decisions.[52] And subsequent decisions also expanded the concept's scope and application beyond the parameters originally addressed in *Houston Chronicle.* In a 1983 decision, the Attorney General concluded that police "radio logs" and "radio cards," which memorialized "all calls answered by police in a 24–hour period," including "the time a call was answered, a brief description of the nature or reason for the call[,] and its location," were qualitatively indistinguishable from the administrative records that *Houston Chronicle* held to be public.[53] Subsequently, in a 1996 decision, the Attorney General applied the same logic in concluding that CAD reports generated from 911 calls were "substantially the same as that specifically held to be public in *Houston Chronicle Publishing Co.*"[54]

---

**49.** 536 S.W.2d at 560.

**50.** *Id.* at 561.

**51.** That case was *Ex parte Pruitt*, which involved claims of public access to certain records from fire investigations. 551 S.W.2d 706, 710 (Tex.1977). In the context of holding that certain investigatory records were not subject to public access, the supreme court cited its per curiam opinion in *Houston Chronicle* as having "recognized that while strong considerations exist for allowing access to investigatory materials, the better policy reason is to deny access to the materials if it will unduly interfere with law enforcement and crime prevention." *Id.* at 710. In contrasting that type of information with the more innocuous information held to be public by the Court of Civil Appeals in *Houston Chronicle*, the supreme court used the phrase "basic information concerning a crime" as a shorthand descriptor for the latter. *Id.* at 709–10 ("In the *Houston Chroni-*

*cle* case, the court of civil appeals held that the public has the right of access to the basic information concerning a crime, such as the offense committed, the location of the crime, the identification of the complainant, the premises involved, the time of the occurrence, the property involved, vehicles involved, a detailed description of the offense in question and the names of the investigating officers.").

**52.** *See* Tex. Att'y Gen. OR1976–127, at 3 ("[Although] the Supreme Court's opinion [in *Houston Chronicle* ] indicates that a question remains as to some of the information held to be public by the Court of Civil Appeals, the opinion of the latter court is the most authoritative judicial interpretation of [the law-enforcement exception] available, and this office will follow that interpretation.").

**53.** *See* Tex. Att'y Gen. OR1983–394, at 1, 3–4.

**54.** Tex. Att'y Gen. OR1983–649, at 3.

Both *Houston Chronicle* and these Attorney General decisions purporting to apply it predated the Legislature's addition of Subsection (c) to the law-enforcement exception, which did not occur until 1997.[55] While acknowledging that Subsection (c) was intended to codify the "basic information" concept that originated in *Houston Chronicle*,[56] the City insists that Subsection (c) should be construed to refer solely to the same "basic information about an arrested person, an arrest, or a crime" that *Houston Chronicle* held to be public—i.e., administrative reports of arrests and the portions of offense reports that case held to be public—rather than to the Attorney General's subsequent "unilateral expansion" of the "basic information" concept. Some of the City's rationales for doing so are plainly unavailing—for example, it has urged that Subsection (c) should be "narrowly construed to apply only to serve the specific constitutional interests identified by the *Houston Chronicle* court," contrary to the PIA's liberal-construction mandate,[57] or that we should simply ignore the Attorney General's pre-

1997 decisions despite their potential relevance in informing the meaning of the statutory language that the Legislature later used.[58] Similarly, the City seems to suggest that the status of "basic information" under Subsection (c) hinges solely on its form, extending only to offense and arrest reports of the sort addressed in *Houston Chronicle*, and thereby categorically excluding the CAD notes at issue here. There is nothing in Subsection (c)'s text to support such a limitation,[59] and the PIA more generally looks to the content of information rather than form or location in determining whether it is public information subject to disclosure.[60]

But the City also makes a more compelling argument. It points out that in Subsection (c) the Legislature did not refer simply to "basic information," but added the modifiers "basic information *about an arrested person, an arrest, or a crime.*" [61] As the City urges, this phrasing belies any intent merely to incorporate wholesale "basic information" in the full breadth in

**55.** *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1231, § 1, sec. 552.108, 1997 Tex. Gen. Laws 4697, 4697 (codifying Subsection (c)).

**56.** *See In re Allen*, 366 S.W.3d at 706 (" 'A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.' "(quoting *Acker*, 790 S.W.2d at 301)); *see also Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex.2012) (noting that Legislature has directed courts to give words in statute a technical meaning if such a meaning has been acquired "by legislative definition or otherwise" (citing Tex. Gov't Code § 311.011(b))).

**57.** *See* Tex. Gov't Code § 552.001(b) ("This chapter shall be liberally construed in favor of granting a request for information.").

**58.** *See, e.g.,* Tex. Gov't Code § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a

court may consider among other matters the . . . circumstances under which the statute was enacted; . . . common law or former statutory provisions, including laws on the same or similar subjects; [and] administrative construction of the statute"); *see also In re Allen*, 366 S.W.3d at 706.

**59.** *See, e.g., Holmes*, 924 S.W.2d at 923–25 (similarly rejecting asserted extra-statutory limitation).

**60.** *See* Tex. Gov't Code § 552.002 (defining "public information" broadly and specifying that such information may be recorded and exist in wide range of media and forms); *see also Adkisson v. Paxton*, 459 S.W.3d 761, 770–75 (Tex.App.–Austin 2015, no pet.) (recognizing that "public information" may include information held by county commissioner in personal email account).

**61.** Tex. Gov't Code § 552.108(c) (emphasis added).

which the Attorney General might have construed that concept in his administrative decisions. Rather, the Legislature has explicitly limited the potential scope of "basic information" subject to disclosure under Subsection (c) solely to that which is "about" (i.e., on the subject of or concerning) [62] either "an arrested person," "an arrest," or "a crime." A further implication of Subsection (c)'s wording is that there can be no "basic information" subject to disclosure under that provision unless there has been "an arrest" or "a crime." These limitations would require, in the very least, some sort of determination by law enforcement that a crime has actually occurred, if not also an arrest made, similar to the circumstances addressed in *Houston Chronicle.*

In response, the Attorney General condemns this reading of Subsection (c) as contrary to his "longstanding interpretation and application of the basic information requirement," which he summarizes as "releasing pertinent details about a criminal investigation to the public, even when no arrest is made or charges pursued." But as for how this "longstanding interpretation and application" squares with the actual statutory text, the Attorney General acknowledges that "[c]learly, there will be no basic information about an 'arrested person' or 'an arrest' if the documents at issue do not pertain to an arrest." He

views the "about ... a crime" limitation to be more malleable, however. The Attorney General insists that "basic information about ... a crime" under Subsection (c) must be construed to encompass "basic information" that is "about" an *investigation* of *potential* or *reported* crime, regardless of whether any crime is actually ascertained to have occurred or is charged. As for why this is so, the Attorney General reasons that if Subsection (c) instead refers only to "basic information about ... a crime" in the sense of a crime that is actually discovered or charged, it would follow that Subsections (a) and (b) of section 552.108 would be limited in the same way, meaning that the City's argument would have relevance only as to information that is not protected by the law-enforcement exception in the first place. The Attorney General's argument overlooks important differences between the wording and scope of Subsections (a) and (b) as compared to Subsection (c). Subsections (a) and (b), unlike (c), contain language extending their scope to encompass information generated in the investigation of potential crimes.[63]

While the Attorney General's "longstanding interpretation and application" of Subsection (c) perhaps derives from some well-intentioned public-policy concerns, what controls our analysis is the statutory text the Legislature has actually written.[64]

---

**62.** *See, e.g., The American Heritage Dictionary of the English Language* 5 (5th ed.2011) (defining "about" as "in reference to; relating to; concerned with").

**63.** *See* Tex. Gov't Code § 552.108(a) ("Information held by a law enforcement agency or prosecutor that *deals with the detection,* investigation, or prosecution of crime ... if: (1) release of the information would interfere with *the detection,* investigation, or prosecution of crime; (2) it is information that *deals with the detection,* investigation, or prosecution of crime only in relation to an investigation that did not result in conviction or de-

ferred adjudication ...."), (b) ("An internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use *in matters relating to law enforcement or prosecution* ... if: (1) release of the internal record or notation would interfere *with law enforcement or prosecution;* (2) the internal record or notation relates to law enforcement only *in relation to an investigation that did not result in conviction or deferred adjudication*....") (emphases added).

**64.** *See, e.g., Holmes,* 924 S.W.2d at 923–25; *accord Boeing,* 466 S.W.3d at 838 (rejecting similar "longstanding" Attorney General PIA

Under Subsection (c) as written, there is simply no support for extending that provision's disclosure requirement to "basic information" that is *not* "about an arrested person, an arrest, or a crime" as the Attorney General would have us do. If Subsection (c) should apply more expansively, that change must come from the Legislature through statutory amendment.[65] Courts must instead "take statutes as they find them." [66]

■ Consequently, analysis of the City's first issue centers on the extent to which any of the CAD notes at issue must be produced in order to provide "basic information about an arrested person, an arrest, or a crime." On the summary-judgment record here, that standard is met only with respect to one of Benzer's ten requests—the request addressed in the aforementioned OR2012–11115, concerning a police investigation of an alleged assault and property damage inflicted upon Benzer by another individual, which concluded with criminal charges against the other individual. The evidence relevant to the other nine requests do not reflect either that an arrest was made or that law enforcement made any determination that a crime had actually occurred.

Accordingly, we sustain the City's first issue with respect to all of Benzer's requests except for the request addressed in OR2012–11115,[67] and render judgment that the City may withhold the information at issue in those nine requests under Section 552.108's law-enforcement exception. As for OR2012–11115, we hold that to the extent information contained in the CAD notes must be provided in order to provide "basic information ... about [the] crime," [68] they are subject to disclosure under Subsection (c).[69]

## Common-law protections

■ In the City's third issue, it alternatively invokes the independent common-law protections of the physical-safety exception and the informer's privilege. In light of our disposition of the City's first two issues, we need address these contentions only with reference to the basic information about a crime in OR2012–11115 that we have held to be subject to disclosure under Subsection (c).

We conclude that the City has failed to raise a fact issue in regard to the physical-safety exception, at least as it would relate to OR2012–11115. Our reasoning begins with the seminal *Cox Texas Newspapers* case in which the Texas Supreme Court first recognized a common-law right to

---

interpretation in light of unambiguous statutory language).

65. *See Holmes*, 924 S.W.2d at 925 ("It is the Legislature's responsibility to impose restrictions, if any, on the Open Records Act's unambiguous and unqualified language.").

66. *Id.* (quoting *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920)).

67. I.e., the nine requests addressed in Tex. Att'y Gen. OR2012–10755; Tex. Att'y Gen. OR2012–11205; Tex. Att'y Gen. OR2012–11135; Tex. Att'y Gen. OR2012–11208; Tex. Att'y Gen. OR2012–12004; Tex. Att'y Gen. OR2012–13432; Tex. Att'y Gen. OR2012–13395; and Tex. Att'y Gen. OR2012–18634.

68. I.e., notes revealing "the offense committed, location of the crime, identification and description of the complainant, the premises involved, the time of the occurrence, property involved, vehicles involved, description of the weather, a detailed description of the offense in question, and the names of the investigating officers." *See Houston Chronicle*, 531 S.W.2d at 186–87.

69. We do not understand the City to be contesting disclosure of the two offense reports related to the incident, and these documents may largely satisfy the City's obligation to produce "basic information" here.

withhold information from PIA disclosure where "disclosure would create a substantial threat of physical harm." [70] Having identified that interest as one protected by Texas common law, the supreme court remanded the case in the "interest of justice" for further proceedings in which the parties could litigate the newly recognized protection's applicability to the information in dispute, vouchers from the Department of Public Safety security detail that is assigned to protect the Governor and his family. [71] In so doing, the court emphasized that "[o]n remand, the trial court must closely examine each of the disputed documents" and that "[t]he dividing line between disclosure and restraint must be shown by proof," specifically "detailed evidence or expert testimony[ ] that revelation substantially threatens harm." [72] It added that while "[a] certain amount of deference must be afforded DPS officers and other law enforcement experts about the probability of harm, . . . vague assertions of risk will not carry the day." [73] The court further intimated that DPS's burden would likely be met in regard to contents of the vouchers that revealed "specific details about the number of officers assigned to protect the governor, their general location in relation to him, and their dates of travel." [74] "Because the past is prologue, at least when it reveals protocol DPS has implemented for ensuring the safety of government officials," the court reasoned, such "information from prior trips" could potentially be "used to inflict future harm." [75]

■ These features of *Cox Texas Newspapers* instruct us that the proper focus when applying the physical-safety exception is whether *disclosure of the particular information at issue* would create a substantial threat that the information could be used to accomplish physical harm. [76] The City's focus, in contrast, has been attempting to demonstrate that *the particular requestor*, Benzer, in himself, presents a substantial threat of physical harm by virtue of a violent behavior pattern and character. As summary-judgment proof, the City presented copies of several judgments and other court documents detailing Benzer's criminal history, which includes convictions for assault on a public servant, harassment, and violation of a protective order. Also in evidence was a 2012 opinion from the Fort Worth Court of Appeals denying Benzer's application for writ of habeas corpus seeking a reduction of bail while he was being held pending trial on a succession of charges. [77] In that opinion, the appellate court noted that Benzer was being held on multiple "offenses alleged to have been committed against individuals who live in his neighborhood," and that "each time Benzer posted bail, he reoffended; and not against some random person, but against a member of his neighborhood." [78]

The City's evidence regarding Benzer's criminal past does indeed bespeak an individual with a disturbing history of violent behavior, including violence targeting or retaliating against specific neighbors. The summary-judgment evidence also supports

70. *Cox Texas Newspapers,* 343 S.W.3d at 118.

71. *See id.*

72. *Id.* at 118–19.

73. *Id.* at 119.

74. *Id.* at 118–19.

75. *Id.*

76. *See id.*

77. *See Ex parte Benzer,* 2012 WL 310508, at *1–4.

78. *Id.* at *3.

the reasonable inference that Benzer's experience with criminal charges and sanctions has not entirely chastened him for the better—the information withheld by the City reflects more recent incidents in which Benzer has once again found himself in verbal altercations with neighbors that threatened to escalate to violence (although, again, law enforcement did not determine that any crime had actually occurred except with regard to OR2012–11115). But as for how this evidence tends to establish that disclosure of the particular basic information at issue in OR2012–11115 would present a substantial risk of physical harm—the concern of *Cox Texas Newspapers*—the City's argument ultimately falls short. Essentially, the City urges us to infer that if Benzer obtained basic information tending to reveal the identities or addresses of neighbors who reported him to the police or were otherwise involved in incidents with him, Benzer would respond by inflicting retributory violence against anyone named. Leaving aside whether this inference about Benzer's behavior is supported by "detailed evidence" versus "vague assertions of risk" within the contemplation of *Cox Texas Newspapers*,[79] we fail to see how this concern would be implicated by the particular basic information ·at issue in OR2012–11115. In that matter, as previously indicated, Benzer was the complainant who summoned police, and the record reflects that he previously had obtained knowledge of the identity of his adversary in the altercation, having filed criminal charges against him.

 For similar reasons, we also conclude that the City has not raised a fact issue with regard to the informer's privilege as a limitation on disclosure of the basic information from OR2012–11115. The informer's privilege is " 'the Government's privilege to withhold from disclosure the identity of individuals who provide the government with information regarding violations of law to officers charged with enforcement of that law.' "[80] In, light of that underlying rationale, the Attorney General has long been of the view that the informer's privilege does not apply to the extent the subject of the complaint already knows the informer's identity.[81] At least where, as here, the requestor is also the informer, we find that analysis persuasive.[82]

 Aside from its concerns about potential physical violence, the City also complains more generally that Benzer's history of vexatiousness [83] suggests that he has "no legitimate purpose" in seeking the information at issue and will merely "us[e] it to further harass and threaten those around him." While this assessment is not entirely implausible on this record, a bedrock policy of the PIA as currently written is that "we may not consider the requesting party's purpose or use for the information," [84] at least when these purposes do

**79.** *See Cox Texas Newspapers*, 343 S.W.3d at 119.

**80.** *Dallas Area Rapid Transit*, 410 S.W.3d at 883 (quoting *Roviaro*, 353 U.S. at 59–61, 77 S.Ct. 623).

**81.** *See* Tex. Att'y Gen. OR1978–208, at 1–2.

**82.** *See Roviaro*, 353 U.S. at 60, 77 S.Ct. 623 ("[O]nce the identity of the informer has been disclosed to those who would have cause to sent the communication, the privilege is no longer applicable."); *see also* Tex. R. Evid. 508(c)(1) (providing that informer's privilege does not apply "if the identity of the informer ... has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action").

**83.** *See supra* n. 5.

**84.** *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 676 (Tex.1995) (citing Tex. Gov't Code § 552.222)).

not involve the violent acts that are the concern of *Cox Texas Newspapers*. It is the Legislature's prerogative whether a case like this one warrants revisiting that policy judgment or others embodied in the Act.[85]

We overrule the City's third issue.

### Attorney's fees

In its fourth issue, the City challenges the judgment award of attorney's fees to the Attorney General. In a governmental body's suit seeking to withhold information under the PIA, such as the City prosecuted here, the court has discretion to award "costs of litigation and reasonable attorney's fees" to either a plaintiff or defendant who "substantially prevails."[86] When exercising such discretion, the court "shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith."[87] Because we have reversed substantial portions of the district court's judgment on the merits—thereby altering the parties' status as prevailing parties—we likewise reverse the judgment award of attorney's fees and remand the parties' respective fee claims to the district court for reconsideration.[88] To that extent, we sustain the City's fourth issue.

### CONCLUSION

We affirm the district court's judgment ordering disclosure only to the extent of providing basic information about the crime that is the subject of OR2012–11115. With regard to each of Benzer's nine other requests, and with respect to the information at issue in OR2012–11115 that need not be produced to provide basic information about a crime, we reverse and render judgment that the City may withhold the information at issue. We likewise reverse the judgment award of attorney's fees and remand the parties' respective fee claims to the district court for further proceedings.

Former Chief Justice Jones not participating

---

85. *See Holmes,* 924 S.W.2d at 925.

86. *See* Tex. Gov't Code § 552.323(b).

