# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00346-CV

---

**Ken Paxton, Attorney General of the State of Texas, Appellant**

**v.**

**David A. Escamilla, Travis County Attorney, Appellee**

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-004329, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

---

## O P I N I O N

Ken Paxton, the Attorney General of the State of Texas, appeals the trial court's final summary judgment that David A. Escamilla, the Travis County Attorney, is not required to disclose deferred prosecution agreement (DPA) records due to exceptions to the Texas Public Information Act (PIA). We will affirm the trial court's judgment.

## BACKGROUND

The County Attorney received a PIA request for each DPA that his office has executed in domestic-violence cases since April 1, 2015.

A DPA is an extra-judicial agreement[1] between a person charged with a crime and the prosecutor to defer the prosecution of a criminal charge for an agreed term during which the

---

[1] The definition and effect of a DPA as described in this paragraph are taken from the uncontroverted affidavit of Assistant County Attorney Mack Martinez, which was attached to the County Attorney's summary-judgment motion. *See also* Tex. Gov't Code § 76.011(a) (authorizing pretrial intervention programs).

criminal defendant must fulfill specified conditions. After the defendant and the prosecutor sign the DPA, the criminal case is conditionally dismissed. If the defendant fulfills all the DPA conditions, the County Attorney takes no further action as the criminal case was already dismissed. However, if the defendant fails to comply with any of the agreement conditions, the County Attorney has the authority to refile the charges and prosecute the case.[2]

The County Attorney declined to release the DPAs and sought an opinion from the Attorney General's Open Records Division, asserting that the requested records were excepted from required public disclosure. *See* Tex. Gov't Code § 552.301 (outlining procedures for obtaining Attorney General decisions about whether requested information falls within exception). The Attorney General issued Open Records Letter Ruling OR2017-16049 in response, determining that the DPAs whose terms had concluded could be withheld pursuant to a provision of the law-enforcement exception, *see id.* § 552.108(a)(2), but the DPAs with terms that had not concluded were not excepted from disclosure and must be released. *See* Tex. Att'y Gen. OR2017-16049 (2017).

The County Attorney timely filed suit seeking declaratory relief from the Attorney General's determination. *See* Tex. Gov't Code § 552.324 (permitting suits to challenge letter ruling of Attorney General on PIA requests). The parties each filed motions for summary judgment, and the trial court at a hearing on the cross-motions reviewed in camera a sample of the records at issue. *See id.* § 552.3221 (providing for court's in camera inspection of records at

---

[2] This Court has construed these agreements in other contexts. *See D.J.H. v. Hays Cty. Dist. Att'y*, No. 03-17-00159-CV, 2018 WL 2016283, at *3 (Tex. App.—Austin May 1, 2018, no pet.) (mem. op.) (expunction of records); *State v. Misiaszek*, No. 03-13-00728-CR, 2014 WL 7149177, at *1–2 (Tex. App.—Austin Dec. 10, 2014, no pet.) (mem. op., not designated for publication) (dismissal of criminal charges).

issue). After the hearing the trial court granted the County Attorney's summary-judgment motion and denied the Attorney General's cross-motion. The trial court's final judgment declared and ordered that all of the DPAs were excepted from disclosure, dividing them into three categories:

(1) The deferred prosecution agreements pertaining to dismissed criminal cases that have not been refiled [Category 1 DPAs] are excepted from public disclosure by section 552.108(a)(2) of the Texas Government Code;

(2) The deferred prosecution agreements pertaining to dismissed criminal cases that have been refiled and then dismissed again [Category 2 DPAs] are excepted from public disclosure by section 552.108(a)(2) of the Texas Government Code; [and]

(3) The deferred prosecution agreements pertaining to dismissed criminal cases that have been refiled and that are still pending [Category 3 DPAs] are excepted from public disclosure by sections 552.108(a)(1), 552.103, and 552.107 of the Texas Government Code.

## DISCUSSION

### Standard of review

This case requires us to construe statutory exceptions to disclosure under the PIA. The statutory-construction issues arise in the context of cross-motions for summary judgment. In our review of such cases, "we determine all issues presented and render the judgment the trial court should have rendered." *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017). Statutory construction presents a question of law, which we determine de novo under well-established principles. *Paxton v. City of Dallas*, 509 S.W.3d 247, 256 (Tex. 2017).

When construing a statute, our primary objective is to give effect to the legislature's intent. *Staff*, 510 S.W.3d at 444. "We seek that intent 'first and foremost' in the statutory text, and '[w]here text is clear, text is determinative' of intent." *Id.* (quoting *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015); *Entergy Gulf States, Inc. v. Summers*,

282 S.W.3d 433, 437 (Tex. 2009)). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We neither rewrite a statute under the guise of interpreting it nor do we look beyond its language for assistance in determining legislative intent unless the statutory text is susceptible to more than one reasonable interpretation. *Staff*, 510 S.W.3d at 444. We narrowly construe exceptions to the disclosure requirement of the PIA. *Texas State Bd. of Chiropractic Exam'rs v. Abbott*, 391 S.W.3d 343, 347 (Tex. App.—Austin 2013, no pet.).

*The law-enforcement exception*

In his summary-judgment motion, the County Attorney asserted that the DPAs are excepted from disclosure under the PIA's law-enforcement exception, which provides in relevant part:

(a) Information held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted from [disclosure] if:

(1) the release of the information would interfere with the detection, investigation, or prosecution of crime; [or]

(2) it is information that deals with the detection, investigation, or prosecution of crime only in relation to an investigation that did not result in conviction or deferred adjudication[.]

Tex. Gov't Code § 552.108(a). The County Attorney contends that subsection (a)(2) excepts from disclosure the first two categories of DPAs and that subsection (a)(1) excepts the third category.[3]

_____

[3] The County Attorney asserts, and the trial court determined, that two other exceptions apply to the third category; however, we need not address those two other exceptions, as we

4

*Category 1 and Category 2 DPAs*

We agree with the County Attorney that the trial court properly determined that subsection (a)(2) of the law-enforcement exception excepts from disclosure Category 1 DPAs—those with unexpired terms in which charges have not been refiled—and Category 2 DPAs—those in which charges were refiled but then dismissed. The exception applies to information that "deals with the . . . investigation or prosecution of crime" (i.e., all of the DPAs) but only if the information is "in relation to an investigation that did not result in conviction or deferred adjudication." *Id.* § 552.108(a)(2). In other words, when a criminal investigation has "resulted in" something other than a conviction or deferred adjudication, the records in relation to that investigation are excepted from disclosure. *See id.*

The PIA does not define the verb "to result [in]," but the common meaning of the verb in this context is to "terminate," "end," or "arise as a consequence, effect, or conclusion." *Webster's Third New Int'l Dictionary* 1937 (2002). Thus, when a criminal investigation has terminated with an outcome *other than* a conviction or deferred adjudication, the records pertaining thereto are excepted from disclosure. The text of the exception focuses on the termination of a criminal *investigation* ("an investigation that did not result in conviction or deferred adjudication"), not the termination of the *prosecution* of criminal charges. A prosecutor's offer to a defendant of deferred prosecution (by which the charges are dismissed and the County Attorney takes no further action, assuming the defendant complies with the agreement's terms) necessarily implies that the prosecutor's investigation of the charges has ended. It is the

---

determine that the law-enforcement exception is dispositive of the issues in this appeal. *See* Tex. R. App. P. 47.1.

prosecutor's decision to conclude the investigation with a DPA that constitutes the termination of the investigation; the dismissal of charges, albeit conditional, is the "result" of the investigation.

This interpretation is mandated by the statute's plain language and is supported by a prior opinion from this Court. *See City of Carrollton v. Paxton*, 490 S.W.3d 187, 196 (Tex. App.—Austin 2016, pet. denied) (concluding that records related to investigation of misdemeanor charges that were dismissed without prejudice and thus subject to being refiled were excepted from disclosure under section 552.108(b)(2), which similarly excepts records "in relation to an investigation that did not result in conviction or deferred adjudication"). A dismissal of criminal charges, even if conditional, constitutes the conclusion of an investigation by way of some action other than a conviction or deferred adjudication. The exception in subsection (a)(2) covers both the DPAs with unexpired terms in which charges have not been refiled (Category 1 DPAs) and the DPAs in cases in which charges have been refiled but then dismissed (Category 2 DPAs) because in both situations the investigation of criminal charges has concluded by way of dismissal rather than conviction or deferred adjudication. *See* Tex. Gov't Code § 552.108(a)(2).

The Attorney General advances a different interpretation of subsection (a)(2)— that it does not cover DPAs with unexpired terms ("pending DPAs") because "prosecution of the charge remains open [and] the eventual 'result' of the investigation remains in question." This interpretation contemplates two types of "results" of an investigation—an immediate result (a DPA) and an "eventual" result (which "remains in question" and depends on whether the defendant fulfills the DPA's requirements); however, the statute does not make such differentiation, focusing on the termination of an investigation, *not* the termination of a prosecution, as explained above. Although we are to give "due consideration" to the Attorney

General's construction and application of the PIA, that does not permit courts to construe the PIA "in derogation of the statutory text the Legislature has actually used." *City of Carrollton*, 490 S.W.3d at 195. The Attorney General's interpretation also undermines the public policy implicit in the statute because if a DPA with an unexpired term were disclosed but then, later, the term expired without charges being refiled, there would be no way to "undo" the disclosure despite the statute's specific exception of dismissed charges. Whether a DPA is subject to disclosure should not depend on when a PIA request is made vis a vis the running of the DPA's term; such an interpretation would prejudice some criminally charged individuals by making their records public while protecting others, merely due to the timing of the request.

The County Attorney's uncontroverted evidence in the form of the affidavits of two assistant county attorneys shows that charges are conditionally dismissed upon the execution of a DPA and that the County Attorney takes no further action upon the end of a DPA's term if the defendant has fulfilled the DPA's conditions. We conclude that dismissal pursuant to a DPA, even if conditional until the DPA's term has run, satisfies the requirement in subsection (a)(2) of an investigation that has not resulted in conviction or deferred adjudication; the Category 1 DPAs are thus excepted from disclosure under the PIA. We also conclude that the dismissal of criminal charges that were refiled after the execution of a DPA satisfies the requirement in subsection (a)(2) of an investigation that has not resulted in conviction or deferred adjudication; the Category 2 DPAs are thus excepted from disclosure as well.

*Category 3 DPAs*

We also agree with the County Attorney that the trial court properly determined that subsection (a)(1) of the law-enforcement exception excepts from disclosure the Category 3

7

DPAs—those pertaining to cases in which a DPA was executed, the defendant failed to comply with one or more conditions of the agreement, and charges were later refiled and are still pending. Subsection (a)(1) excepts from disclosure information dealing with the prosecution or investigation of crime "if the release of the information would interfere with the detection, investigation, or prosecution of crime." *See* Tex. Gov't Code § 552.108(a)(1). The County Attorney's uncontroverted evidence in Assistant County Attorney Martinez's affidavit and our review of the DPAs at issue[4] indicate that release of the DPAs to the public in these pending, active cases would interfere with the detection, investigation, or prosecution of crime.

Martinez averred that release of the Category 3 DPAs "will result in excessive publicity, resulting in due process violations and endangering the prosecution." *See Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177, 186 (Tex. App.—Houston [14th Dist.] 1975) ("[T]he State has a legitimate interest in preventing excess publicity which might lead to a denial of due process and endanger the prosecution."), *writ ref'd n.r.e.*, 536 S.W.2d 559 (Tex. 1976) (per curiam). Release of the DPAs to the public would likely have resulted in excessive publicity and thus interfered with the prosecution and the defendants' due-process rights, as asserted by the County Attorney. The County Attorney—charged with investigating and prosecuting crime, *see* Tex. Code Crim. Proc. art. 2.02 (outlining duties of county attorneys); *Shepperd v. Alaniz*, 303 S.W.2d 846, 850 (Tex. App.—San Antonio 1957, no writ) ("It has always been the principal duty of the district and county attorneys to investigate and prosecute the violation of all criminal laws[.]")—is uniquely positioned to determine whether the release of

---

[4] A supplemental clerk's record was filed under seal in this Court containing the DPAs submitted to the trial court for in camera review. *See* Tex. Gov't Code § 552.3221(c)(3) ("The information at issue filed with the court for in camera inspection shall be . . . transmitted by the clerk to any court of appeal as part of the clerk's record.").

particular documents would interfere with those duties. And, as already mentioned, the County Attorney's evidence demonstrating that release of the DPAs would "endanger the prosecution" was uncontroverted.

The Attorney General argues that release of the DPAs in pending cases cannot as a matter of law interfere with the detection, investigation, or prosecution of crime because the County Attorney "voluntarily" provides a DPA to each criminal defendant upon the defendant's signing it; the defendant is not restricted from disseminating the agreement to the public; and the information, therefore, is already "public" and thus must be made available to any other person. *See* Tex. Gov't Code § 552.007 (allowing for "voluntary" disclosure of public information unless its disclosure is expressly prohibited by law or confidential under law and providing that public information made available "voluntarily" must be made available "to any person"). The County Attorney does not "voluntarily" provide a copy of the DPA to the defendant but is, rather, required by law to provide it to the defendant. *See* Tex. Code Crim. Proc. Art. 39.14(a) (requiring State to produce to defendant "any written or recorded statements of the defendant" upon defendant's timely request); *see also* Tex. Att'y Gen. ORD-454 (1986) (concluding that governmental entity's release of information that was not voluntary but was compelled by law did not bar entity from invoking PIA exception). Furthermore, a defendant's possession of the DPA executed in his or her pending cause is unlikely to interfere with the detection, investigation, or prosecution of crime, unlike the disclosure of one or more defendants' DPAs to the general public. *See* Tex. Code Crim. Proc. Art. 39.14(e) (prohibiting defendant and his representatives from disclosing to third parties any documents received from State under this article except if already publicly disclosed or upon court order).

9

Based on our review of the DPAs at issue, supported by the County Attorney's uncontroverted evidence, we conclude that the trial court did not err in determining that the Category 3 DPAs are excepted from disclosure under subsection (a)(1). *See* Tex. Gov't Code § 552.108(a)(1).

## CONCLUSION

The trial court properly granted summary judgment in favor of the County Attorney in determining that the DPAs at issue are excepted from disclosure under the PIA. Accordingly, we affirm the trial court's final judgment.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   November 6, 2019

10