**Opinion filed March 16, 2023**



In The

# Eleventh Court of Appeals

_____

### No. 11-22-00052-CV

_____

### AIM MEDIA TEXAS, LLC D/B/A *THE ODESSA AMERICAN*, Appellant
### V.

### CITY OF ODESSA, TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-20-02-0127-CV**

### O P I N I O N

This appeal concerns a request for mandamus relief under the Texas Public Information Act.[1]  AIM Media Texas, LLC d/b/a *The Odessa American* is the daily

---

[1]*See* TEX. GOV'T CODE ANN. §§ 552.001–.376 (West 2020) (Texas Public Information Act).  The Act "guarantees access to public information, subject to certain exceptions." *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011).  Public information includes information that is collected, assembled, or maintained by or for a governmental body.  GOV'T § 552.002(a).

newspaper for Odessa and surrounding communities (hereinafter the "OA"). The OA filed suit against the City of Odessa (the City) seeking a writ of mandamus under Section 552.321. *See* TEX. GOV'T CODE ANN. § 552.321 (West 2020). The City is the sole defendant named in the OA's suit.

This is the second appeal that we have considered in the underlying suit. In the first appeal, the City appealed the trial court's denial of its plea to the jurisdiction that challenged whether the OA had adequately pleaded a cause of action for mandamus relief under the TPIA. *City of Odessa v. AIM Media Texas, LLC*, No. 11-20-00229-CV, 2021 WL 1918968, at *3 (Tex. App.—Eastland May 13, 2021, no pet.) (mem. op.) (*AIM Media I*). We determined that the newspaper had adequately pleaded a claim for mandamus relief. *Id.*

After the first appeal, the City filed a second plea to the jurisdiction predicated on the City's assertion that the OA's cause of action is now moot because the City "has produced all the responsive documents which are relevant to this lawsuit." The appeal now before us arises from the trial court's order granting the City's second plea to the jurisdiction. At the time of dismissal, the trial court also denied the OA's motion for summary judgment. For the reasons detailed below, we affirm.

*Background Facts*

As a part of its operations, the OA provides its readers with information regarding crimes and alleged criminal activity occurring in the City of Odessa. The OA, in turn, relies on the City to act promptly in producing public information relating to such crimes and criminal activity.

The dispute between the parties appears to have originated after a mass shooting that occurred in Odessa on August 31, 2019. Before the shooting, the City regularly released public documents, including police reports and probable cause affidavits, within a few hours after they were generated. The OA has since

experienced increased delays in connection with the City's fulfillment of its requests for public information.

The OA alleges—and the City does not dispute—that the increased delays are a result of a new policy and practice in which the city attorney reviews all requests for information that are submitted by the OA. A substantial number of those requests are then forwarded to the Texas Attorney General for review pursuant to the terms of the TPIA. *See* GOV'T § 552.301 (requiring a governing body to ask for a decision from the attorney general when it receives a request for information that it wishes to withhold from public disclosure). Our review of the Attorney General's Open Records Decisions has revealed that the City has made more than 600 requests for rulings over the last three years.

The OA's pleadings describe several examples of alleged unlawful delay in releasing information on the part of the City, and the parties have entered into a stipulation that describes the timeframes for the Attorney General requests and the production of information in connection with those examples. The stipulations reflect the following:

- Information concerning the mass shooting was first produced 138 days after the initial request. The City requested an Attorney General opinion in connection with this request, and the 138-day delay includes a 68-day period in which the Attorney General's opinion was pending.

- A request for information concerning the arrest of Fabian Polvan was made on December 2, 2019. The City produced some of the requested information 14 days later, and the requested information was fully produced 92 days following the request. The City requested an Attorney General opinion in connection with this request, and the 92-day delay included a 72-day period in which the Attorney General's opinion was pending.

- A request for information concerning a probable cause affidavit supporting the arrest of Abel Carrasco was made on December 23, 2019. The City

produced the requested information 74 days later. This 74-day delay also includes a 56-day period in which the Attorney General's opinion was pending.

- A request for information concerning the arrest of Lillie Pherguson was made on January 6, 2020. The City produced some of the requested information on the following day, and the requested information was fully produced 44 days following the request. This 44-day delay included a 36-day period in which the Attorney General's opinion was pending.

- A request for a police report and probable cause affidavit concerning the arrest of Robert Serrano Franco was made on June 25, 2021. The charges against Franco included four counts of aggravated assault against a public servant, two counts of aggravated assault with a deadly weapon, accident involving injury, and evading arrest or detention with a vehicle. All requested information in connection with this incident was provided within the next 5 days, and some of the requested information was provided immediately.

- The stipulation also includes a description of a request for information concerning a 2021 audit of the City's finances. This information was produced 8 days later.

It is undisputed that, as of the date the trial court signed an order of dismissal in this cause, the City had provided all of the public information and documents that were responsive to the OA's requests that were identified in the stipulations. It is also undisputed that all of the requested information was produced voluntarily.

*"Basic Information"*

Under the TPIA, a governing body such as the City is generally required to make public information available for inspection. *See* GOV'T § 552.021. Among other things, such information includes "a completed report" or "investigation." *Id.* § 552.022(a)(1). Insofar as law enforcement activities are concerned, information concerning the detection, investigation, and prosecution of crimes is excepted from this general rule. *Id.* § 552.108(a). Likewise, the internal records and notations of

4

law enforcement agencies and prosecutors are excepted. *Id.* § 552.108(b). However, the Act explicitly recognizes that "basic information about an arrested person, an arrest, or a crime" does not fall within these exceptions. *Id.* § 552.108(c).

The genesis of what constitutes "basic information" as that term is used in Section 552.108(c) is the landmark decision in *Houston Chronicle Publishing Co. v. City of Houston*, 531 S.W.2d 177, 187 (Tex. App.—Houston [14th Dist.] 1975), *writ ref'd* n.r.e., 536 S.W.2d 559 (Tex. 1976) (per curiam); *see City of Carrollton v. Paxton*, 490 S.W.3d 187, 197–200 (Tex. App.—Austin 2016, pet. denied) (discussing the historical significance of *Houston Chronicle*). In *Houston Chronicle*, the Fourteenth Court of Appeals found that, as a matter of right under the First Amendment to the United States Constitution, the newspaper was entitled to certain "front page" information from a law enforcement offense report, including (1) the offense committed, (2) location of the crime, (3) identification and description of the complainant, (4) the premises involved, (5) the time of the occurrence, (6) property involved, (7) vehicles involved, (8) description of the weather, (9) a detailed description of the offense in question, and (10) the names of the investigating officers. 531 S.W.2d at 186–87. As noted in *City of Carrollton*, the holding of *Houston Chronicle* "quickly became enshrined in Attorney General open-records decisions." 490 S.W.3d at 199. As of the date of this opinion, the Office of the Texas Attorney General has cited *Houston Chronicle* over 73,000 times in its open-records decisions. Further, in a recent open-records decision involving a request by the City of Odessa, the Attorney General's Office noted as follows with respect to the effect of *Houston Chronicle*:

> Section 552.108 does not except from disclosure basic information about an arrested person, an arrest, or a crime. GOV'T CODE § 552.108(c). Basic information refers to the information held to be public in the *Houston Chronicle* decision. *See* 531 S.W.2d at 186–88; Open Records Decision No. 127 at 3–4 (1976) (summarizing types of

information deemed public by *Houston Chronicle* decision).  Thus, with the exception of basic information, which the city must release, the city may withhold Exhibit C under section 552.108(a)(1) of the Government Code.

Tex. Att'y Gen. OR2022-39237.  Thus, the City is incorrect in its assertion that the holding in *Houston Chronicle* is of little significance.

Similarly, the OA's complaints are primarily focused on the City's promptness in producing the "basic information" described in *Houston Chronicle* and the TPIA.  Because it is public information under the Act, such information must be produced "promptly," which means "as soon as possible under the circumstances, that is, within a reasonable time, without delay."  GOV'T § 552.221(a); *see AIM Media I*, 2021 WL 1918968, at *3.  Similarly, the *Houston Chronicle* court held that "[t]he constitutionally protected access of the press and public" to the basic information described therein "should be made immediately available at a convenient central location to meet the need of the public's right to know."  531 S.W.2d at 187.  In the case before us, the OA essentially contends that the terms "promptly" under Section 552.221(a), and "immediately," as recognized in *Houston Chronicle* should be construed synonymously.

The OA maintains that the City's ongoing production of basic information is not "prompt" and/or "immediate."  During oral argument, counsel for the OA specifically asserted that the City's utilization of the Attorney General review process should not be causing delay in the production of basic information.  As such, the OA is seeking a mandamus compelling the City "to comply with the TPIA by promptly producing public information regarding crimes and arrests."  In other words, the OA—at least in part—seeks a "prospective mandamus" that directs the City to act promptly in its ongoing and future responses to requests for basic

information.  With this background in mind, we now turn to the merits of the OA's appeal.

*Jurisdiction*

In its first issue, the OA complains that the trial court erred in granting the City's second plea to the jurisdiction.  Courts must ensure that they have subject-matter jurisdiction to decide a case or controversy.  *Am. K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 260 (Tex. 2018) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993)).  Whether a court has subject-matter jurisdiction is a legal question that we review de novo.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Ector Cnty. v. Breedlove*, 168 S.W.3d 864, 865 (Tex. App.—Eastland 2004, no pet.).  A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding its allegation of jurisdictional facts or (2) an evidentiary challenge to the existence of jurisdictional facts.  *Miranda*, 133 S.W.3d at 226–27.  "[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do."  *Id.* at 227.

A pleading's title and form does not determine its character—we focus on the substance of the relief sought to determine the nature of the claim asserted.  *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) (citing *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011)); *Aaron v. Fisher*, 645 S.W.3d 299, 310 (Tex. App.—Eastland 2022, no pet.); *see Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021).  It appears that the OA is seeking two forms of relief: (1) a request for a mandamus compelling the production of specific information under the TPIA, and (2) a request for a prospective mandamus that compels the ongoing, *timely* production of future requests for information under the TPIA.  In assessing the

jurisdictional issues in this case, it is important to distinguish between the two forms of relief that the OA seeks.

A. *The Requests Described in the OA's Pleadings*

We begin our analysis by addressing the specific past requests for information that are described above. In so doing, we note that—while the City has treated its claims as such, and while we found that its pleadings supported a cause of action under the TPIA in *AIM Media I*—it is not entirely clear that the OA ever intended to seek relief with respect to these specific requests. In its live pleadings,[2] such requests are cited only as "examples" of a broader pattern. Furthermore, at oral argument, counsel for the OA characterized its claims as seeking prospective relief relating to the ongoing, timely production of basic information. Nevertheless, as we did in *AIM Media I*, we continue to construe the OA's pleadings liberally. *See Miranda*, 133 S.W.3d at 226–27. As set out below, to the extent the OA is seeking relief with respect to such past requests, its claims are now moot.

"The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events." *Matthews ex rel. M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016); *see Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149–50 (Tex. 2012). It prevents courts from rendering advisory opinions, which are outside the jurisdiction conferred by the Texas Constitution. *Matthews*, 484 S.W.3d at 418; *see also Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam). "[A] court cannot decide a case that has become moot during the pendency of the litigation." *Heckman*, 369 S.W.3d at 162 (citing *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999)); *see Perry v. Del*

---

[2]We note that the OA amended its pleadings after the issuance of our opinion in *AIM Media I*.

8

*Rio*, 66 S.W.3d 239, 251 (Tex. 2001) (a case can become moot after it is filed).[3] Courts "do not have power to decide moot cases, whether they 'involve a matter of public concern' or not." *Morath v. Lewis*, 601 S.W.3d 785, 789 (Tex. 2020) (citing *City of Krum v. Rice*, 543 S.W.3d 747, 750 (Tex. 2017) (per curiam)).

The release of the requested information during the pendency of a TPIA suit generally renders the controversy moot. *See City of Georgetown v. Putnam*, 646 S.W.3d 61, 72 (Tex. App.—El Paso 2022, pet. denied) (mandamus claim under TPIA was moot because the document being sought had been produced); *Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 30 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (release of information eliminated the justiciable controversy that formed the basis of the newspaper's TPIA claim); *Tex. State Bd. of Veterinary Med. Examiners v. Giggleman*, 408 S.W.3d 696, 704 (Tex. App.—Austin 2013, no pet.) (mandamus claim was rendered moot when disputed exhibits were eventually produced by the Board); *Como v. City of Beaumont, Tex.*, 345 S.W.3d 786, 796 (Tex. App.—Beaumont 2011), *rev'd on other grounds*, 381 S.W.3d 538 (Tex. 2012) (after city complied with document request, further mandamus relief under the TPIA was moot).

The OA argues that this case falls within two exceptions to the mootness rule: the voluntary-cessation doctrine and the review-evasion doctrine. Under the voluntary-cessation doctrine, a defendant's cessation of challenged conduct does not, in itself, deprive a court of the power to hear or determine claims for *prospective* relief. *Matthews*, 484 S.W.3d at 418. Nonetheless, dismissal may be appropriate when subsequent events make it "absolutely clear" that the challenged conduct could not reasonably be expected to recur. *Id.* The OA's requests for mandamus regarding

---

[3]As noted in *City of Krum*, a controversy can become moot at any time, including while it is on appeal. 543 S.W.3d at 749.

the specific matters that are described in the OA's pleadings (and in the subsequent stipulations) are not requests for prospective relief. As such, the voluntary-cessation doctrine is inapplicable to such claims.

Under the review-evasion doctrine, a plaintiff must establish both (1) that the challenged act is of such short duration that the issue becomes moot before review may be obtained and (2) that a reasonable expectation exists that the same complaining party will be subjected to the same action again. *See, e.g.*, *In re Fort Worth Star Telegram*, 441 S.W.3d 847, 852 (Tex. App.—Fort Worth 2014, no pet.). Unlike the voluntary-cessation doctrine, this exception is applied only in rare circumstances. *Tex. A & M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011).

The review-evasion doctrine is also inapplicable here. There is no evidence in the record indicating that the information regarding the matters described above will be withheld from the OA in the future. As such, the OA has not satisfied the second prong of the review-evasion test. Furthermore, even if we were to consider how the City may or will respond to similar requests in the future, as the OA maintains we should, we cannot say that future requests for similar information will become moot before review can be obtained. "In determining whether an issue evades review, the focus is not on whether a court has reviewed the exact issue in the past, but whether, by its very nature, the issue is not 'effectively reviewable' in any future case." *Putnam*, 646 S.W.3d at 74 (citing *Gates v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00631-CV, 2016 WL 3521888, at *6 (Tex. App.—Austin June 23, 2016, pet. denied) (mem. op.)). Thus, "[i]f courts have previously considered the issue, then it does not evade appellate review." *Ngo v. Ngo*, 133 S.W.3d 688, 692 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.).

The OA continues to possess a right to pursue mandamus relief for any public information that it believes is wrongfully withheld in the future. *See Putnam*, 646 S.W.3d at 75 ("[t]he statute expressly permits for review, and the legion of reported cases demonstrate that parties can avail themselves of that right"). Therefore, the denial of any requests for basic information are readily subject to future action by the OA and other members of the public.

B. *The Request for Prospective Relief*

Having addressed the issue of the specific information requests that are described in the pleadings and stipulations, we now turn to the OA's request for a mandamus compelling the ongoing, timely production of basic information. As set forth below, we must determine if the OA's claim against the City for prospective relief is barred by governmental immunity.

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). The State retains sovereign immunity from suit to the extent that immunity has not been abrogated by the legislature. *See Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Governmental immunity operates like sovereign immunity to afford similar protection to political subdivisions of the State, including counties, cities, and school districts. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

Governmental immunity encompasses both immunity from suit and immunity from liability. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit completely bars actions against governmental entities unless the legislature

11

expressly consents to suit. *Reata Constr. Corp.*, 197 S.W.3d at 374. Immunity from suit deprives the courts of subject-matter jurisdiction and thus completely bars the plaintiff's claims. *Wichita Falls State Hosp.*, 106 S.W.3d at 696.

It is within the sole province of the Texas Legislature to waive or abrogate sovereign immunity. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997). Furthermore, under Section 311.004 of the Texas Government Code, a statute should not be construed as a waiver of sovereign immunity unless the waiver is signaled by "clear and unambiguous language." *See IT–Davy*, 74 S.W.3d at 854.

Under the TPIA, the legislature has waived sovereign and governmental immunity to permit requestors to file a suit for a writ of mandamus seeking to compel a governmental body to make information available for public inspection. *See City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 583 (Tex. 2018); *Empower Texans, Inc. v. Dallas Cnty.*, 648 S.W.3d 664, 671 (Tex. App.—Dallas 2022, pet. denied). Specifically, "[a] requestor . . . may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body . . . refuses to supply public information . . . ." GOV'T § 552.321(a).

In assessing the waiver that is granted in Section 552.321 for a mandamus action under the TPIA, the Austin Court of Appeals has held that such waiver is "limited to disclosure of information" and that the legislature has not provided a waiver of sovereign immunity based on a governmental body's delay in releasing information. *Gates*, 2016 WL 3521888, at *4. In reaching its holding, the court in *Gates* cited Section 311.034 for the proposition that "[a] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." *Id.* (quoting GOV'T § 311.034 (West 2013). In reliance on *Gates*, the El Paso Court of Appeals also has held that Section 552.321 "does not

. . . provide for a waiver of governmental immunity for a claim based on a delay in providing documents." *Putnam*, 646 S.W.3d at 73. We agree with the Austin and El Paso Courts of Appeals that immunity is not waived under Section 552.321 for the *delay* in releasing requested information. Here, the City's actions resulted only in the *delay* in releasing the information the OA had requested. Thus, a mandamus compelling the ongoing, timely production of information is not available to the OA under the TPIA. As such, the trial court had no jurisdiction under Section 552.321 to render mandamus relief relating to the timeliness of the City's practices for the production of information.

The TPIA provides another statutory waiver of immunity in Section 552.3215. GOV'T § 552.3215. This statute authorizes declaratory relief under the TPIA. *Id.* Although the OA has not sought declaratory relief in its live pleading, in many respects, the OA's request for prospective mandamus relief is a claim for declaratory relief because it seeks a determination as to how the City should respond to future requests for information under the TPIA. [4] As noted previously, we examine the substance of the relief sought to determine the nature of the claim asserted. *See In re J.Z.P.*, 484 S.W.3d at 925; *Aaron*, 645 S.W.3d at 310.

Section 552.3215 is not available to confer a waiver of immunity for the OA's suit against the City. First, as noted in *Putnam*, the Texas Supreme Court has indicated in dicta that an action for declaratory relief under Section 552.3215 must be brought by a local county or district attorney. *Putnam*, 646 S.W.3d at 70 (citing *Paxton v. City of Dallas*, 509 S.W.3d 247, 252 (Tex. 2017)).[5] Furthermore, under

---

[4]The OA included a claim for a declaratory judgment in its original petition.

[5]As stated by the Texas Supreme Court in *Paxton*: "The PIA further authorizes certain local or state officials to seek declaratory or injunctive relief based on a complaint by 'a person who claims to be the victim of a [TPIA] violation,' but only after the governmental body is afforded notice and fails to timely cure the alleged violation." 509 S.W.3d at 252 (quoting GOV'T § 552.3215).

13

the holding of *Texas Department of Transportation v. Sefzik*, Texas courts do not have jurisdiction to consider a party's claim for declaratory relief against either the state or a political subdivision that seeks to have that party's rights construed under a statute. 355 S.W.3d 618, 621–22 (Tex. 2011). The First Court of Appeals has applied *Sefzik* in the specific context of the TPIA, holding that sovereign/governmental immunity precludes a claim for declaratory relief against a governmental entity to either construe the TPIA or to construe the plaintiff's rights under the TPIA. *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr.*, 586 S.W.3d 37, 55–57 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see Putnam* 646 S.W.3d at 79–80 (discussing *Sefzik* and *Fallon*).

A claim seeking to compel a governmental official to perform a prospective act that the plaintiff considers to be nondiscretionary is in the nature of an ultra vires claim. *Sefzik*, 355 S.W.3d at 621 n.2. As recently noted by the Texas Supreme Court, "[a]n ultra vires suit . . . 'seeks to bring government officials into compliance with statutory or constitutional provisions.'" *Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, No. 21-0194, 2023 WL 175524, at *6 (Tex. Jan. 13, 2023) (quoting *Chambers-Liberty Cntys. Nav. Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019)). The OA's claim for prospective mandamus relief is a claim to bring city officials into compliance with applicable statutory or constitutional provisions because it seeks to have a determination that city officials are not, as the OA contends, timely producing basic information as required by the TPIA. As such, the claim that the OA asserts is essentially an ultra vires claim.

An ultra vires claim seeking prospective relief against a governmental official does not implicate sovereign or governmental immunity because it is not a suit against the governmental entity. *Sefzik*, 355 S.W.3d at 621. But the proper defendant to an ultra vires claim is the governmental official "whose acts or

14

omissions allegedly trampled on the plaintiff's rights, not the [governmental entity] itself." *Id.* (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009)); *see Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76 (Tex. 2015). ("[S]uits complaining of ultra vires actions may not be brought against a governmental unit, but must be brought against the allegedly responsible government actor in his official capacity." (citing *Heinrich*, 284 S.W.3d at 373)).[6] As recently explained by the Texas Supreme Court:

> In *City of El Paso v. Heinrich*, we held that governmental immunity does not bar a suit that seeks to bring government officials into compliance with statutory or constitutional provisions. 284 S.W.3d at 369. Such "*ultra vires* claims" must be brought against government officials in their official capacity and may seek only prospective injunctive remedies. *Id.*

> The court of appeals correctly held that the State's *ultra vires* claim cannot proceed against the District itself. An *ultra vires* claim may name a government official in his official capacity, but the underlying governmental entity remains immune from suit. *Heinrich*, 284 S.W.3d at 372–73.

*Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019). Simply put, the governmental entity is not a proper party to an ultra vires claim, and the governmental entity remains immune from an ultra vires suit. *Id.*; *Sefik*, 355 S.W.3d at 621; *Heinrich*, 284 S.W.3d at 372–73. Because the OA is seeking prospective relief solely against the City to declare that it is not in compliance with the timeliness of the TPIA's production requirements, the City's governmental immunity has not been waived. *See Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 348; *Sefzik*, 355 S.W.3d at 621–22; *Fallon*, 586 S.W.3d at 55–57.

---

[6]As noted in *Patel*, sovereign/governmental immunity does not prohibit suits brought to require governmental officials to comply with statutory or constitutional provisions. 469 S.W.3d at 76 (citing *Heinrich*, 284 S.W.3d at 372).

The dissent cites *City of Houston v. Kallinen* for the proposition that a suit seeking a mandamus for the production of documents under the TPIA does not implicate sovereign/governmental immunity because it is not a claim for money damages. 516 S.W.3d 617, 625–26 (Tex. App.—Houston [1st Dist.] 2017, no pet.). However, the scope of sovereign/governmental immunity is not limited to suits for money damages. *Sefzik*, 355 S.W.3d at 620–21 ("While the doctrine of sovereign immunity originated to protect the public fisc from unforeseen expenditures that could hamper governmental functions, . . . it has been used to shield the state from lawsuits seeking other forms of relief"). It has also been applied, for example, to suits under the Uniform Declaratory Judgment Act. *Id.* at 620; *W. D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 839 (Tex. 1958). Even the First Court of Appeals—the same court that issued *Kallinen*—recognizes that suits under the UDJA can be barred by sovereign/governmental immunity. In *Fallon*, the First Court of Appeals, sitting en banc, held that sovereign/governmental immunity bars a claim seeking a declaration construing the TPIA and the claimant's rights under it. 586 S.W.3d at 56–57. Here, the OA's request for prospective mandamus relief regarding the timely production of information under the TPIA is similar to the relief that was requested in *Fallon* inasmuch as it also requires a construction of the TPIA and a determination of the OA's rights under the TPIA.

Because the OA's claims for the production of specific information are moot, and because we lack jurisdiction to grant prospective relief solely against the City as it relates to alleged ongoing delays in the production of information under the TPIA, we overrule the OA's first issue. In reaching this decision, we have not considered the merits of the OA's contentions regarding the timeliness of the City's production of basic information or the City's statutory compliance with the TPIA. As such, we express no opinions on the merits of the OA's timeliness contentions.

16

*Remaining Issues*

In its second issue, the OA maintains that the trial court erred in refusing to grant the OA's motion for summary judgment. Because we have determined that the trial court was without jurisdiction, we do not reach the issue of whether the motion for summary judgment was properly denied. *See Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 105 (Tex. 2014) (stating that without jurisdiction, the court "cannot proceed at all" and may not determine the merits of the case (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007))). Accordingly, we do not address the merits of the OA's second issue.

In its third issue, the OA asks us to consider whether, in light of our decision, this matter should be remanded for the consideration of its request for attorneys' fees. Under the TPIA, a court is required to assess "reasonable attorney fees incurred by a plaintiff who substantially prevails." GOV'T § 552.323. However, when a governmental body voluntarily releases information to a plaintiff in a TPIA matter prior to entry of a final judgment or other order, the plaintiff has not "substantially prevailed." *Putnam*, 646 S.W.3d at 77; *Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 30–34 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Giggleman*, 408 S.W.3d at 705. For this reason, the OA's third issue is also overruled.

*Conclusion*

We recognize that the relief sought by the OA implicates critical First Amendment rights. *See Houston Chronicle*, 531 S.W.2d at 187. Because basic information is public information under the Act, the statute requires that it must be produced "promptly," which means "as soon as possible under the circumstances, that is, within a reasonable time, without delay." GOV'T § 552.221(a). Citing *Houston Chronicle*, the OA seeks a construction of Section 552.221(a) that basic

information must be produced "immediately." *See* 531 S.W.2d at 187. But despite the historical significance of *Houston Chronicle* with respect to the TPIA, it did not create a private cause of action for the media or a waiver of sovereign/governmental immunity for suits brought against governmental entities by persons seeking prospective relief to secure the prompt release of basic information.

The record before us demonstrates that the City—which at one time was willing and capable of providing basic information to media sources "within hours"—is now delaying the production of the same information for days, weeks, and even (in the case of the mass shooting) months. The City has offered little justification or reasons for its abrupt change in its policy and practice of releasing requested information, other than that it simply wanted to change it. Nevertheless, we are constrained by the manner in which the legislature chose to frame the TPIA's cause of action for mandamus relief, as well as the fact that governmental immunity has not been waived for either the delay in releasing requested information or for an action for prospective relief against the City for a declaration of the OA's rights under the TPIA.

*The Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


March 16, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.
(Williams, J., dissenting with opinion)

18